**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AMY F.**, <br><br> Plaintiff, <br><br> v. <br><br> **COMMISSIONER OF THE SOCIAL SECURITY ADMINISTRATION**, <br><br> Defendant. | Civil Action No. 20-11613 (ZNQ) <br><br> **MEMORANDUM OPINION** |

**QURAISHI, District Judge**

This matter comes before the Court on Plaintiff Amy F.'s ("Amy")[1] appeal from the Commissioner of the Social Security Administration's (the "Commissioner") final decision, which denied Amy's request for disability insurance benefits. (ECF No. 1.) The Court has jurisdiction to review this appeal under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1. For the reasons below, the Court affirms the Commissioner's decision.

**I.        ISSUES PRESENTED FOR REVIEW**

To start, the Court must determine what issues it must answer in this appeal. Although normally a straightforward exercise, Amy has failed to present which issues the Court should review in her brief. *See* L. Civ. R. 9.1(e)(5)(A) (mandating that appellant's brief "shall" contain "a statement of the issues presented for review"). Her statement of primary contentions charges

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

Administrative Law Judge Kim Soo Nagle ("Judge Nagle") with two errors in calculating her residual functional capacity ("RFC"). (*See generally* Statement of Primary Contentions or Arguments for Relief, ECF No. 7.) Guided by Amy's statement and other scattershot arguments raised in her brief, the Court gleans the following two evidentiary questions for review: *First*, does substantial evidence support Judge Nagle's determination that a claimant did not suffer from impairments in combination that qualified under the Social Security Administration's (the "Administration") listed impairments? *Second*, does substantial evidence support Judge Nagle's determination of a claimant's residual functional capacity ("RFC")? The Court begins with a brief background of the procedural posture and decision by Judge Nagle.[2]

## II.     BACKGROUND

### A.     Procedural Posture

Amy filed an application for disability insurance benefits on November 22, 2016, alleging a disability onset date of May 15, 2015. (AR 155-56.) The Administration denied the request initially. (*Id.* at 92-96.) Thereafter, Amy requested a hearing (*id.* at 97-98), and Judge Nagle held that hearing on June 19, 2019 (*id.* at 41-84). Judge Nagle issued a written opinion, where she determined that Amy was not disabled. (*Id.* at 12-30.) Amy appealed that decision, and the Administration's Appeals Council denied that request for review. (*Id.* at 1-6.) This appeal followed. (ECF No. 1.) Amy filed her opening brief on May 24, 2021 (ECF No. 10), and the Commissioner filed an opposition brief on July 7, 2021 (ECF No. 12). Amy did not file a reply brief.

---

[2] The Administrative Record ("Record" or "AR") is available at ECF No. 6-1 through 6-18. The Court will reference the relevant page numbers in the Record and will not reference corresponding ECF page numbers within those files.

### B. Judge Nagle's Decision

In her June 19, 2019 opinion, Judge Nagle concluded that Amy was not disabled under the prevailing Administration regulations. (*See generally* AR 15-25.) Judge Nagle set forth the five-step process for determining whether an individual is disabled. (*Id.* at 16-17 (citing 20 C.F.R. § 404.1520(a)).) At step one, Judge Nagle found that Amy had not "engaged in substantial gainful activity" from the disability onset date through the last insured date of December 31, 2016. (*Id.* at 18 (citing 20 C.F.R. § 404.1571).) At step two, Judge Nagle found that Amy suffered from several severe impairments, including polysubstance abuse, osteoarthritis, and major depressive disorder. (*Id.* at 18 (citing 20 C.F.R. § 404.1520(c)).) At step three, Judge Nagle determined that Amy did not have "an impairment or combination of impairments" that qualified under the Administration's listed impairments. (*Id.* at 18-20 (citing 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526).) Before proceeding to step four, Judge Nagle concluded that Amy had the RFC to "perform light work" as the Regulations define that term. (*Id.* at 20-23 (citing 20 C.F.R. § 404.1567(b)).) At step four, Judge Nagle concluded that Amy "is unable to perform any past relevant work." (*Id.* at 23-24 (citing 20 C.F.R. § 404.1565).) Finally, at step five, Judge Nagle concluded that "there were jobs that existed in significant numbers in the national economy" that Amy could have performed. (*Id.* at 24-25 (citing 20 C.F.R. § 404.1569, .1569(a)).)

This appeal concerns Judge Nagle's step-three and RFC determinations. As to step three, Judge Nagle considered evidence of Amy's mental impairments but concluded that they did not meet the criteria in Listing 12.04. (*Id.* at 18.) Judge Nagle assessed four criteria (the so-called "Paragraph B" criteria): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*Id.* at 18-19; *see also* 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04). Regarding the first criterion, Judge Nagle concluded that Amy had a mild limitation, relying on a psychological

evaluation from Dr. Sunny Bath that "did not indicate any significant limitation" and Amy's self-reporting. (AR 18 (citing AR 1317-32).) Regarding the second criterion, Judge Nagle found that Amy had a moderate limitation after considering that Amy witnessed a murder in May 2015. (*Id.* at 19. *But see* AR 1329 (noting that Amy had "normal" eye contact, "calm" motor activity, "unimpaired" speech, and "cooperative" interactional style).) Similarly, for the third criterion, Judge Nagle concluded that Amy had a moderate limitation after crediting that she reported significant memory issues but also finding that no objective medical sources supported Amy's reports. (AR 19; *see also id.* (noting that Amy "had no difficulty providing information about her medical, work, and legal history at both the hearing and in the record").) Finally, regarding the last criterion, Judge Nagle again found a moderate limitation, concluding that although Amy reported that her mother helped take care of her, other evidence showed that Amy could support herself. (AR 19; *see id.* at 906 (showing that Amy attended weekly therapy sessions on her own).)

Judge Nagle also considered the paragraph C criteria and rejected the notion that Amy's mental disorders qualified under that paragraph. (AR 19.) Paragraph C requires that claimants establish that mental disorders are "serious and persistent." 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04. Among other reasons, Judge Nagle pinpointed that Amy did "not have a medically documented history of the disorder(s) over a period of at least two years." (AR 19.)

Turning to the analysis at step four, Judge Nagle initially found that Amy had the RFC "to perform light work as defined in 20 C.F.R. [§] 404.1567(b)" with some exceptions. (*Id.* at 20.) As part of that finding, Judge Nagle determined that, Amy's self-reports notwithstanding, "[t]he medical evidence of record does not support [physical] disability." (*Id.* at 21.) Pointing to several exhibits, Judge Nagle found that Amy did not provide any medical evidence during 2015 and 2016 showing disability and that, in all events, later-in-time evidence showed that Amy was treated for

disability. (*See id.* (noting that although "[t]he record does confirm a broken clavicle in late 2015," that break "was treated non-operatively" and "there was evidence of healing on imaging"); *id.* (noting that Amy "complained of arthritis" but that "no physical examinations or imaging to indicate functional limitations" existed "prior to the date last insured"); *id.* ("The claimant has treatment well after the date last insured for back pain through pain management, and she is treated conservatively with injections, medication, and recommendations for physical therapy"); *id.* ("[P]rimary care records from 2016 specially note no complaints of headaches.").) Still, Judge Nagle incorporated osteoarthritis into Amy's RFC. (AR 21 ("I have limited the claimant to light work prior to the date last insured to accommodate this impairment.").)

As to the mental impairments, Judge Nagle similarly concluded that the "minimal mental health treatment is insufficient to support a finding of disability." (AR 22.) She reasoned that Amy's mental impairments began after she witnessed a murder in May 2015 but that subsequent evidence supported no more than a moderate working limitation. (*Id.* at 22-23.) For example, Judge Nagle reviewed the record and noted the following:

> The record includes approximately two months of treatment information, and most of that is just reports the claimant makes to her primary care physician about her outside psychological treatment. Her mental status exams at the primary care physician are normal. The fatigue and drowsiness testified to as a side effect to medication is not noted in the record during the period at issue. Furthermore, there is no discussion or evidence to support significant PTSD symptomology, and in fact, the claimant was repeatedly diagnosed with depression, not PTSD, outside of this one very illegible record from a Dr. Walter.

(*Id.* at 22; *see also id.* ("[T]here is no detail or information about functional limitations between May 2015 and December 2016 explaining how [the May 2015 murder] affected the claimant's ability to work.").) Accordingly, Judge Nagle determined that Amy's mental impairments warranted no more than a light-duty accommodation. (AR 23.)

### III.   LEGAL STANDARD

#### A.   Standard of Review

On appeal from the final decision of the Commissioner, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401 (citing *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). Substantial evidence "'may be somewhat less than a preponderance' of the evidence." *Ginsburg v. Richardson*, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966)).

In reviewing the record for substantial evidence, the court "may not 'weigh the evidence or substitute [its own] conclusions for those of the fact-finder.'" *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005) (quoting *Williams v. Sullivan*, 970 F.2d 1178, 1182 (3d Cir. 1992)). Even if the court would have decided differently, it is bound by the Administrative Law Judge's ("ALJ") decision if it is supported by substantial evidence. *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001). The court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014) (citing *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 431 (3d Cir. 1999)). "Since it is apparent that the ALJ cannot reject evidence for no reason or for the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can

determine whether the reasons for rejection were improper." *Cotter v. Harris*, 642 F.2d 700, 706-07 (3d Cir. 1981) (citation omitted).

### B.  Establishing Eligibility for Disability Insurance Benefits

To be eligible for disability insurance benefits, claimants must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months." 42 U.S.C. § 423(d)(1)(A). Under the statute, claimants are disabled only if their physical or mental impairments are "of such severity that [they are] not only unable to do [their] previous work but cannot, considering [their] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." *Id.* § 423(d)(3).

Administration regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520. For the first step, claimants must establish that they have not engaged in any substantial gainful activity since the onset of their alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, claimants must establish that they suffer from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). Claimants bear the burden of establishing the first two requirements, and failure to satisfy either one results in a denial of benefits. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The third step requires that claimants provide evidence that their impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If claimants demonstrate that they suffer from a listed impairment or that their severe impairment is equal to a listed impairment, they are presumed to be disabled and entitled to disability insurance benefits.

*Id.* If they cannot so demonstrate, the eligibility analysis proceeds to step four. The fourth step of the analysis requires the ALJ to determine whether claimants' RFC permit them to resume previous employment. *Id.* § 404.1520(a)(4)(iv). If claimants' RFC permit previous employment, claimants are not "disabled" and not entitled to disability insurance benefits. *Id.* § 404.1520(f). The burden of persuasion rests with claimants in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009). At the fifth step, the burden shifts to the Commissioner to demonstrate that claimants can perform other work consistent with their medical impairments, age, education, past work experience, and RFC. *Id.* If the Commissioner cannot satisfy this burden, claimants will receive disability insurance benefits. 20 C.F.R. § 404.1520(g).

**IV.     DISCUSSION**

Amy appeals the Administration's Appeals Council's denial of review of Judge Nagle's decision. The centerpiece of her appeal is that Judge Nagle erred regarding the step three and RFC determinations. The Court considers each issue in turn.

**A.     Judge Nagle Did Not Err at Step Three**

Amy argues that Judge Nagle incorrectly assessed her mental impairments at step three. Principally, she argues that Judge Nagle failed to consider the Paragraph A criteria, her bipolar disorder, her PTSD disorder, and her combination of impairments. (*See* Pl.'s Br. 8-17, ECF No. 10.) As Amy raises many of these arguments without development and without citation to the record, the Court considers each summarily.

Starting with the Paragraph A criteria, Judge Nagle bypassed the Paragraph A criteria in her Listing 12.04 analysis and instead considered the Paragraph B and Paragraph C criteria. In establishing mental impairments under Listing 12.04, claimants must meet the Paragraph A *and* Paragraph B criteria or meet the Paragraph A *and* Paragraph C criteria. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.04. Here, Judge Nagle chose to analyze the Paragraph B and Paragraph C criteria

instead of analyzing the common denominator—concluding that Amy failed to put forth sufficient evidence under either paragraph. Thus, any error committed by Judge Nagle in failing to consider the Paragraph A criteria was harmless. *See Dercole v. Saul*, No. 18-12887, 2021 WL 1399861, at *11 (D.N.J. Apr. 14, 2011) ("Once the ALJ determined that Plaintiff did not satisfy the criteria for either paragraph B or paragraph C, there was no reason for him to expressly consider the paragraph A criteria."); *Lewis v. Comm'r of Soc. Sec.*, No. 15-6275, 2017 WL 6329703, at *8 (D.N.J. Dec. 11, 2017) ("The ALJ simply chose to proceed with a full analysis of Paragraph B, and, upon determining that Paragraph B was not satisfied, chose not to address Paragraph A as there would be no point given that the criteria for Paragraph B had already failed.").

Regarding bipolar disorder, the Commissioner offers unrebutted evidence that Amy was diagnosed with this disorder after the date last insured in December 2016. (Def.'s Br. 12, ECF No. 12.) To be sure, Amy must present evidence that her disability accrued between her onset date and her date last insured, here May 15, 2015 through December 31, 2016. *See Malloy*, 306 F. App'x at 763 (noting that claimant bears the burden at step three); *Popovich v. Berryhill*, No. 16-3042, 2017 WL 2780746, at *5 n.4 (D.N.J. June 27, 2017) ("It is [claimant's] burden at step three to prove that a condition meets or equals the listings in Appendix 1. Wondering aloud why a particular condition was not considered is not evidence that the condition meets the criteria for a listing."). Amy has not pointed to any evidence that her bipolar disorder arose during that period. Notably, she does not challenge the Commissioner's evidence in reply. And even if she had, substantial evidence buttresses the Commissioner's contention that Amy's bipolar diagnosis postdates her disability eligibility period. (*See, e.g.*, AR 939 (reporting that Amy's bipolar diagnosis had an onset date of September 19, 2018).)

Amy's PTSD challenge is a closer call. That's because the ALJ did not expressly consider Listing 12.15 as part of her step-three analysis. Titled "Trauma- and stressor-related disorders," Listing 12.15 extends to claims of PTSD and (like Listing 12.04) requires claimants to meet the criteria under Paragraph A and Paragraph B or Paragraph A and Paragraph C. 20 C.F.R., pt. 404, subpt. P, app. 1, § 12.15. Nonetheless, an ALJ's failure to consider a specific listing is not fatal. Indeed, "[t]he failure to consider a specific Listing does not require remand, if the ALJ considered the probative evidence and sufficiently explained her conclusion." *Albaugh v. Kijakazi*, No. 20-418, 2021 WL 3472149, at *2 (W.D. Pa. Aug. 6, 2021). As stated earlier, Judge Nagle considered and analyzed the record evidence under the criteria in Paragraph B and Paragraph C for Listing 12.04. The criteria are identical for Listings 12.04 and 12.15. *See Hecht v. Comm'r of Soc. Sec.*, No. 19-16760, 2021 WL 4482729, at *3-4 (D.N.J. Sept. 30, 2021); *Albaugh*, 2021 WL 3472149, at *2 ("Parts B and C are the same for Listings 12.15 and 12.04." (citing *Baum v. Saul*, No. 20-46, 2021 WL 2000510, at *5 (W.D. Pa. May 29, 2021))). Thus, because Judge Nagle analyzed the same criteria she would have analyzed under Listing 12.15, her error in overlooking Amy's PTSD diagnosis at step three is harmless.[3]

Finally, Judge Nagle did not err in considering Amy's impairments in combination. True, ALJs must consider any mental impairments in combination with a claimant's physical impairments. *Torres v. Comm'r of Soc. Sec.*, 279 F. App'x 149, 152 (3d Cir. 2008). But claimants must also show how an ALJ's failure to consider impairments in combination would have altered

---

[3] Further, Judge Nagle weighed all the evidence regarding Amy's PTSD diagnosis as part of her RFC determination. *See Williams v. Comm'r of Soc. Sec.*, No. 20-12254, 2022 WL 279838, at *5 n.4 (D.N.J. Jan. 31, 2022) ("The Third Circuit has held that an ALJ's step-three determination is supported by substantial evidence where the medical evidence informing that determination is discussed with respect to the claimant's residual functional capacity." (citing *Cop v. Comm'r of Soc. Sec.*, 226 F. App'x 203, 208 (3d Cir. 2007))).

the outcome. *See Holloman v. Comm'r of Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (noting that "[o]rdinary harmless error review" applies to administrative appeals—meaning that claimants must explain how the error "could have made any difference" (second quoting *Shinseki v. Sanders*, 556 U.S. 396, 413 (2009))). Here, the Court concludes that any error was harmless. Judge Nagle thoroughly reviewed the sparse psychological evidence in the record and considered Amy's own testimony in reaching her step three conclusions. In other words, Judge Nagle gave Amy the benefit of the doubt in step three. (*See* AR 19 ("However, I have taken into account the traumatic event from May 2015 and her subjective reports and has [sic] found the claimant was moderately limited in this area.").) The Court struggles to see how Judge Nagle's outcome would change on remand—particularly given the sparse record in this case.[4]

## B.   Judge Nagle Did Not Err in Determining Amy's RFC

Turning to the next question on appeal, the Court considers whether Judge Nagle erred in her RFC determination. Amy's broadside against Judge Nagle's RFC determination comprises the ALJ's failure to consider reasons why Amy had insufficient evidence to establish her disabilities. The problem, however, is that Amy fails to support this argument with citations to relevant law and—critically—relevant pin-cites to the record. "Judges are not like pigs, hunting for truffles buried in the record." *Doeblers' Pa. Hybrids, Inc. v. Doebler*, 442 F.3d 812, 820 n.8 (3d Cir. 2006) (citation omitted). To that end, the Third Circuit has warned claimants that they "bear the responsibility to comb the record and point the Court to the facts that support their arguments." *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014). Indeed, Amy "bears the burden of

---

[4] Further, some of the evidence considered by Judge Nagle touched on Amy's physical impairments, including physical observations of Amy at the hearing. (*See* AR 19 ("No issues with participating in the totality of the hearing were noted, and she maintained adequate attention and concentration throughout."); *id.* ("The claimant uses medical transport to attend her doctor's appointments.").)

showing that the ALJ's determination was not supported by substantial evidence." *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082, at *2 (D.N.J. Nov. 16, 2016).

Amy has failed to heed the Third Circuit's warning. For example, Amy argues that Judge Nagle "failed to consider the findings of her numerous treating doctors and therapists," that she "did not consider the Claimant's circumstances or her inability to receive treatment due to factors beyond her control," and that she "misread many of the treating doctor's records." (Pl.'s Br. 8.) As to which findings, or which treatment, or which records, Amy provides no answers: her brief is bereft of citations as to these critical contentions. What's more, Amy provides no legal support for her argument that Judge Nagle was obligated to consider her incarceration, her homelessness, or her substance abuse as reasons for failing to seek medical treatment. Nor does she explain how those facts led to her inability to seek medical treatment.[5] In fact, regarding Amy's substance abuse, Judge Nagle concluded that Amy suffered from the severe impairment of polysubstance abuse and analyzed Amy's history of subsequent sobriety:

> [T]here is evidence of a substance and alcohol abuse disorder. However, the claimant testified that she remained sober from alcohol from September 2016 to June 2017. She has currently been sober since June 15, 2018. Given the indication of partial, and now full remission, although the claimant's polysubstance abuse is a severe impairment, there is no indication that it is material.

---

[5] In one instance, Amy cites various medical records for the proposition that her incarceration and homelessness "substantially contributed to [her] post-traumatic stress disorder and personality disorders." (Pl.'s Br. 8 (citing sources).) But none of those sources establish why Amy was unable to seek medical treatment for those disorders.

(AR 23.) Because Amy has not provided adequate law or facts to undercut that determination and because Amy has the burden to do so, the Court finds no error in Judge Nagle's RFC determination.[6]

## V.  CONCLUSION

Having reviewed the record as a whole, the Court affirms the denial of review of Judge Nagle's decision by the Administration's Appeals Council. The Court will issue an order consistent with this Memorandum Opinion.

Date: May 31, 2022

                                                   s/ Zahid N. Quraishi
                                                   **ZAHID N. QURAISHI**
                                                   **UNITED STATES DISTRICT JUDGE**

---

[6] To the extent Amy argues that Judge Nagle failed to consider her PTSD or other mental impairments in her RFC determination, the Court rejects that contention. Judge Nagle thoroughly considered Amy's mental impairments—including her PTSD diagnosis—and found a light-duty restriction based on those impairments. (AR 22-23.)